UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE RUDLOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23 CV 416 CDP |
| | ) | |
| MARTIN O'MALLEY[1], | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Stephanie Rudloff brings this action seeking judicial review of the Commissioner's decision denying her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381.  42 U.S.C. §§ 405(g) and 1383(c)(3) provide for judicial review of a final decision of the Commissioner.  Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**Procedural History**

Plaintiff was born in 1971 and protectively filed her application on September 10, 2020 .  (Tr. 11, 285-90.)  She alleges she became disabled beginning September 10, 2020, because of depression, pleurisy, neuropathy, back pain, chronic obstructive pulmonary disease, manic depression, and diabetes.  (Tr. 340.)

Plaintiff's application was initially denied on March 23, 2021 and upon reconsideration on July 28, 2021.  (Tr. 205-09, 222-25.)  After a telephonic hearing before an ALJ on March 14, 2022, the ALJ issued a decision denying benefits on March 28, 2022.  (Tr. 11-25, 31-72.)  On February 7, 2023, the Appeals Council denied plaintiff's request for review.  (Tr. 1-7.)  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. § 1383(c)(3).

In this action for judicial review, plaintiff contends that her residual functional capacity (RFC) is not supported by substantial evidence with respect to either her exertional or non-exertional limitations.  She also argues that the ALJ improperly evaluated opinion evidence and her subjective symptoms.  She asks that I reverse the Commissioner's final decision and remand the matter for further evaluation.  For the reasons that follow, I will affirm the Commissioner's decision.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts (ECF #14-1) only to the extent they are admitted by

the Commissioner (ECF #21-2).  I find the Commissioner's objections to

plaintiff's statement of facts to be supported by the record, so I adopt his version of

those disputed facts (ECF #21-1).  Additional specific facts will be discussed as

needed to address the parties' arguments.

## Discussion

A.    <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act,

plaintiff must prove that she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211,

1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552,

555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only

if [his] physical or mental impairment or impairments are of such severity that [he]

is not only unable to do [his] previous work but cannot, considering [his] age,

education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a

five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482

U.S. 137, 140-42 (1987).  At Step 1 of the process, the Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, at Step 2 the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then she is not disabled.  At Step 3, the Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If she meets this burden and shows that she is unable to perform her past relevant work, the

4

burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  "[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590

F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence.  *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider whether a claimant's subjective complaints are consistent with the medical evidence.  *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors, dosage, effectiveness and side effects of medication, and functional restrictions).[2]  When an ALJ gives good reasons for the findings, the

---

[2] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.  However, the analysis remains largely the same, so the Court's use of

6

court will usually defer to the ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696

(8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full

and fair record in the non-adversarial administrative proceeding.  *Hildebrand v.*

*Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.     ALJ's Decision

In her written decision, the ALJ found that plaintiff had not engaged in

substantial gainful activity since September 10, 2020.  (Tr. 13.)  The ALJ found

that plaintiff had the following severe impairments: major depressive disorder,

generalized anxiety disorder, post-traumatic stress disorder, bilateral carpal tunnel

syndrome, status-post bilateral carpal tunnel release surgeries, ulnar nerve

entrapment, morbid obesity, degenerative disc disease of the lumbar spine,

degenerative joint disease of the feet, osteoarthritis of the right shoulder, diabetes

mellitus with peripheral neuropathy, COPD, and iron deficiency anemia.  (Tr. 13.)

The ALJ found plaintiff had the non-severe impairments of congestive heart

failure, chronic kidney disease, hypertension, dyslipidemia, gastroesophageal

reflux disease, peptic ulcer disease, irritable bowel syndrome, and plantar fasciitis.

---

the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the
intensity, persistence, and limiting effects of symptoms are consistent with the objective medical
evidence and other evidence of record."  *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25,
2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6
(8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive
analysis to be applied" when evaluating a claimant's subjective complaints).

(Tr. 13.)  The ALJ determined that plaintiff's impairments or combination of

impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part

404, Subpart P, Appendix 1.  (Tr. 14.)  The ALJ found plaintiff to have the residual

functional capacity (RFC) to perform light work with the following limitations:

> [S]he can frequently handle, finger and feel with her bilateral upper
> extremities.  She can occasionally reach overhead with her right upper
> extremity.  She can occasionally climb ramps and stairs.  She should
> never be required to climb ladders, ropes, or scaffolds.  She can
> occasionally stoop, kneel, crouch, and crawl.  She must avoid hazards,
> such as unprotected heights and operational control of dangerous
> machinery.  She must avoid pulmonary irritants.  She can tolerate no
> more than occasional exposure to extreme cold or vibration.  She is
> able to learn, remember, and carry out simple, routine tasks.  She is
> able to use reason and judgment to make simple, routine work-related
> decisions.  She is able to work at an appropriate and consistent pace
> while performing simple, routine tasks.  She is able to complete
> simple, routine tasks in a timely manner.  She is able to ignore or
> avoid distractions while performing simple, routine tasks.  Her
> working environment should involve only gradual changes in the job
> setting and duties.  She is able to work close to or with others without
> interrupting or distracting them while performing simple, routine
> tasks.  She is able to sustain an ordinary routine and regular
> attendance at work while performing simple, routine tasks.  In
> addition, she is able to work a full day without requiring more than the
> allotted number or length of rest periods during the day while
> performing simple, routine tasks

(Tr. 16.)  The ALJ found that plaintiff had no past relevant work and relied upon

vocational expert testimony to support a conclusion that that there were significant

jobs in the economy of laundry folder, bottle packager, and housekeeper that

plaintiff could perform.  (Tr. 124)  The ALJ therefore found plaintiff not to be disabled.  (Tr. 25.)

C.    Paragraph B Criteria

Plaintiff first argues that the ALJ erred in formulating her RFC because the paragraph B criteria are not supported by substantial evidence.  This argument is rejected, as the ALJ does not examine the paragraph B criteria when fashioning the RFC.  Instead, the paragraph B criteria are used by the ALJ at Steps 2 and 3 of the five-step evaluation process to rate the severity of mental impairments in the following four functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and, adaptation and self-management.  Steps 2 and 3 are separate from the RFC assessment used at Steps 4 and 5 of the sequential evaluation process, which requires a more detailed assessment by itemizing various functional limitations. *See* SSR 96-8p ("the limitations identified [for evaluating mental impairments] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process"); *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) ("As a practical matter . . . the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized.").

Here, plaintiff does not argue that her mental impairments meet or medically equal the criteria of listings 12.04, 12.06, 12.15, or any other mental health listing. The ALJ determined at Steps 2 and 3 that plaintiff had "no more than moderate limitations" in the four functional areas.  (Tr. 14-15.)  The Court concludes that there is nothing inconsistent with the ALJ's separate analyses at the different steps in this case, as "moderate difficulties in the areas noted are consistent with being able to understand, remember, and carry out simple instructions while performing non-detailed tasks."  *Chismarich*, 888 F.3d at 980.  The issue is whether the RFC's non-exertional limitations are supported by supported by substantial evidence in the record as a whole.  As set forth below, the answer is yes.

D.   <u>RFC Determination</u>

RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations."  20 C.F.R. § 404.1545(a).  "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.  *McKinney v. Apfel*,

10

228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779
(8th Cir. 1995)).

Plaintiff claims that her RFC is not supported by substantial evidence
because the ALJ failed to properly consider limitations from all her severe, as well
as non-severe, impairments.  Plaintiff argues that the ALJ should have also
considered sacroiliitis and degenerative disc disease of the cervical spine as
medically determinable impairments in her RFC assessment.[3]  A CT scan of
plaintiff's abdomen on January 5, 2021, in connection with abdominal complaints
showed sclerosis of both SI joints consistent with bilateral sacroiliitis, unchanged.
The impression was no acute abnormality.  (Tr.  86.)  Although plaintiff was
advised to consider a rheumatology referral, there is no indication that plaintiff
ever sought treatment for bilateral sacroiliitis.  (Tr. 974-75.)  Moreover, plaintiff
did not allege bilateral sacroiliitis as a disability on her application or at the
hearing.  (Tr. 340, 35-36.)   An ALJ is not obliged "to investigate a claim not
presented at the time of the application for benefits and not offered at the hearing

---

[3] Plaintiff mistakenly refers to her plantar fasciitis as one of her severe impairments which the
ALJ did not properly account for in the RFC.  ECF 14 at 5.  However, the ALJ did not find
plantar fasciitis to be a severe impairment.  Instead, she determined that plantar fasciitis is a non-
severe impairment because it was adequately managed with medication and/or treatment.  (Tr.
13.)  There is no evidence in the record to support a conclusion that plaintiff's plantar fasciitis
should be considered a severe impairment.

as a basis for disability."  *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (cleaned up).

As for plaintiff's allegation of degenerative disc disease of the cervical spine, an x-ray taken of plaintiff's cervical spine on December 16, 2021, revealed that the vertebral body and intervertebral disc heights were within normal limits, and the prevertebral soft tissues were also within normal limits.  (Tr. 1260.)  Given these normal findings and the absence of any indication in the medical records or by the plaintiff that these conditions required treatment or were in any way disabling, the ALJ did not substantially err in failing to consider degenerative disc disease of the cervical spine and sacroiliitis in her formulation of plaintiff's RFC.

Plaintiff next argues that there is no medical support for the exertional and non-exertional limitations in her RFC.  Plaintiff's generalized assertions of error without pointing to any evidence in the record to support her allegations of disabling limitations make it difficult to analyze plaintiff's arguments.  There is, however, substantial evidence on the record as a whole to support the ALJ's RFC determination.

Plaintiff incorrectly suggests that the ALJ's RFC is not supported by substantial evidence unless there is a medical opinion which addresses her specific functional limitations.  Although the RFC must be supported by some medical evidence, "there is no requirement that an RFC finding be supported by a specific

12

medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).   Instead, the RFC must be determined by the ALJ based on all the relevant evidence, which includes her subjective symptoms, her testimony, the medical evidence, and her daily activities.

In this case, after considering all this evidence in a lengthy opinion, the ALJ concluded that plaintiff retained the capacity to perform light work, with significant modifications tailored to her credible limitations.   In so doing, she did not substantially err.   The ALJ properly evaluated the medical evidence using the new regulations applicable to plaintiff's claim.   *See* 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.").   "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted); *See* 20 C.F.R. § 416.920b(c)(1)-(3) (2017) (statements on issues reserved to the Commissioner, such as statements that a claimant is or is not disabled, are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.").

13

While the ALJ does have a duty to fully and fairly develop the record, the ALJ is not required to obtain additional medical evidence if the evidence of record provides a sufficient basis for the ALJ's decision. *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011). Here, the substantial evidence on the record as a whole supports the ALJ's RFC determination and no additional consultative examinations were required.

Plaintiff argues that the ALJ failed to adequately account for her neuropathy, foot problems, back pain, and morbid obesity when determining that she could perform light work, which she claims is defined as lifting up to 20 pounds and "a good deal of walking." 20 C.F.R. § 416.967(b).[4]

---

[4] The regulation actually states in relevant part as follows:

> To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. *Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.* To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b) (emphasis supplied).

With respect to her exertional limitations, the ALJ properly relied on the objective medical evidence of record, including imaging and physical examination findings.  The ALJ thoroughly summarized the medical record in this case, which showed plaintiff's neuropathy in her hands resolved following carpal tunnel surgery and better control of her diabetes.  (Tr. 1177, 1382.)  Plaintiff reported only residual wrist pain while "using slot machines."  (Tr. 1382.)  To account for any limitations with respect to her hands and wrist, the ALJ properly limited plaintiff to work requiring only frequent handling and fingering bilaterally.

As for plaintiff's complaints with respect to neuropathy in her legs and feet and pain in her back and neck, plaintiff's gait and ambulation were repeatedly observed to be normal during multiple examinations despite her obesity, and she was able to move her extremities well.[5]  Plaintiff's empty and full can tests were negative for weakness on December 21, 2021, with a full range of motion in

---

[5] Tr. 884-86 – examination of 12/1/20  shows plaintiff moves all extremities well with no muscle weakness, back pain or swelling and normal gait and station; Tr. 728-30 – 1/5/21 exam is negative for arthralgias, joint swelling, and myalgias with normal range of motion;  Tr. 899-907 – 1/13/21 examination reveals normal gate and station, normal range of motion and no tenderness in head and neck, normal range of motion, alignment and no tenderness in spine, no cyanosis or edema in extremities, which all move well; Tr. 929-40 – 3/3/21 exam shows plaintiff moves all extremities well despite some pain and limited motion, no joint swelling or muscle weakness, no cyanosis or edema in extremities, and normal gait and station; Tr. 980-86 – 5/3/21 exam shows no edema or erythema in musculoskeletal system, normal git, with no complaints of joint or muscle pain; Tr. 1169-78 – 7/22/21 examination revealed musculoskeletal system all within normal limits; Tr. 1205-13 – 10/19/21 exam shows normal gait and station, normal range of motion and no tenderness in head and neck, a normal range of motion and alignment without tenderness in back despite complaints of pain, and no cyanosis or edema in extremities.

extremities.  (Tr. 1249.)   Electrodiagnostic testing performed on March 11, 2021, was negative for large fiber neuropathy of the legs or lumbosacral radiculopathy. (Tr. 916.)  To account for plaintiff's credible limitations in these areas, the ALJ limited plaintiff to light exertional work which did not require her to climb ladders, ropes, and scaffolds, work at unprotected heights, control machinery, and only occasionally required her to come into contact with extreme cold or vibration, or to stoop, kneel, crouch and crawl.[6]  These limitations are consistent with her conservative treatment and numerous relatively normal examinations and test results.

In formulating plaintiff's RFC, the ALJ properly considered that plaintiff received only conservative treatment for her back and neck pain, which included exercise, muscle relaxers, a heating pad, and steroids. (Tr. 1176-77, 1194-95, 1210-12.)  *See Milam v. Colvin,* 794 F.3d 978, 985 (8th Cir. 2015) (ALJ may properly consider claimant's conservative treatment history for back pain, which included exercises and medication, when fashioning RFC).

After thoroughly summarizing this evidence of plaintiff's conservative treatment and largely normal examinations and objective test results, the ALJ formulated a restricted light work RFC based on plaintiff's credible exertional

---

[6] The ALJ also limited plaintiff to work requiring only occasional reaching overhead with her right upper extremity to account for her osteoarthritis in her right shoulder, but plaintiff does not challenge this finding on appeal.

limitations of record with respect to her neuropathy, foot problems, back and neck pain, and morbid obesity.  None of the evidence of record supported greater restrictions on plaintiff's ability to walk or lift.  Although plaintiff may believe that the ALJ should have assessed the medical evidence differently to support greater limitations, it is not my role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in her determination of plaintiff's RFC.  *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).  Under these circumstances, the ALJ did not err in evaluating plaintiff's exertional limitations when fashioning her RFC, and her decision is entitled to deference.

The same is true with respect to the non-exertional limitations in plaintiff's RFC.  To account for plaintiff's credible limitations with respect to her depression, anxiety, and PTSD, the ALJ limited plaintiff to simple, routine tasks with only gradual changes in the job setting and duties.  (Tr. 16.)  Plaintiff argues that the ALJ erred because the RFC does not specifically state that the working environment must be "low stress" despite her stating elsewhere in the decision that the evidence does not suggest that plaintiff cannot perform restricted light work duties in a low stress environment.  (Tr. 19, 22.)   That the ALJ summarized the specific non-exertional limitations in plaintiff's RFC (simple, routine, tasks, gradual changes only) as "low stress" elsewhere in her decision does not amount to reversible error, as a mere deficiency in opinion writing is not a sufficient reason to

17

set aside an ALJ's finding. *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021). Here, the ALJ's RFC, including the non-exertional limitations, is supported by substantial evidence and explained in adequate detail.

The ALJ's non-exertional limitations in the RFC are also supported by the objective medical evidence of record as a whole, which included numerous normal mental status examinations by health care providers.[7]  Plaintiff reported that her anxiety was well-controlled on current medications.  (Tr. 889, 906.)

---

[7] Tr. 524 – on 1/24/20 visit to emergency room, plaintiff was oriented to person, place, and time, and her mood and affect were normal;[7] , Tr. 561 – upon 7/29/20 examination for hospital follow up, plaintiff had normal neurological exam with appropriate mood and affect; Tr. 882-91 – 12/1/20 examination revealed plaintiff had normal active and alert mental status, normal mood and affect, good judgment, normal recent and remote memory, and she was oriented to time, place, person, and situation; Tr. 899-907 – 1/13/21 examination revealed normal mental status; Tr. 1169-78 – 7/22/21 examination revealed plaintiff had normal active and alert mental status with good judgment, normal mood and affect, normal recent and remote memory, and normal orientation to time, place, person, and situation; Tr. 730 – during 1/5/21 hospital visit for abdominal pain, plaintiff presented with normal speech, behavior, thought content, and judgment, and was alert and oriented to person, place, and time;  Tr. 984 – during 5/12/21 post-surgical follow up, plaintiff was observed to have normal mood and affect with good judgment and insight; Tr. 1334-41 – during 8/3/21 visit to the hospital for chest pain, plaintiff's mental status was alert and oriented to person, place, and time, with normal behavior, thought, and judgment; Tr. 1188-97 – 9/21/21 examination revealed normal neurological and psychiatric findings; Tr. 1205-13 – 10/19/21 psychiatric and neurological examinations were normal; Tr. 1224-28 – upon examination on 1/31/22, plaintiff was observed to be alert and oriented to time, place, and person; Tr. 1253-60 – during 12/16/21 visit to urgent care for neck pain following a car wreck, plaintiff was alert and oriented to time, place, and person with normal speech and no acute distress; Tr. 1244-52 – plaintiff reported a depressed mood during her 12/21/21 examination due to her father's recent death, but her mental status examination was otherwise normal, with appropriate affect, no pressured speech, and linear and logical thought content.

The ALJ also reviewed plaintiff's treatment records from her mental health providers, which also support the RFC's non-exertional limitations.[8]  Plaintiff had a telephone visit with a mental health practitioner on November 17, 2020 for mood disturbance and anxiety.  (Tr. 656-60.)  Plaintiff reported feeling good and eating and sleeping normally.  She stated that while her anxiety was still present, she was able to handle it.  Plaintiff's mood disturbance was rated as mild and her anxiety was rated as moderate due to the isolation and stress of the Covid-19 quarantine.  Her mental status examination was within normal limits and she was continued on her medications.

Plaintiff had a telephone follow-up visit on February 9, 2021, for mood disturbance and anxiety.  (Tr. 892-98.)  She reported her mood was "pretty good" but noted high anxiety due to health problems.  Plaintiff reported that her psychotropic medications were effective and had no side effects.  Plaintiff had normal speech rate and volume, was cooperative, and her thoughts were goal directed and logical.  Insight and judgment were fair.  Plaintiff's mental status was

---

[8] The ALJ also reviewed plaintiff's treatment notes from her telephonic psychiatry visit on April 21, 2020, which was prior to her onset date.  (Tr. 924-28.)  Plaintiff reported an "ok" mood.  She stated that her psychotropic medications were working and denied side effects.  Plaintiff said she had high anxiety at times but had good stress relievers in place.  She was living with a friend in the country during the Covid-19 quarantine and spent most of her days fishing.  Plaintiff's speech was normal and her thought process was goal directed and logical.  She had no delusions and her insight and judgment were fair.  Plaintiff was alerted and fully oriented, with normal language, attention, and memory.  Her mood disturbance and anxiety were classified as mild, and her depression was rated as stable or improved.  Plaintiff's psychotropic medications were continued.

alert and oriented to time, place, and person, with intact language and memory and normal attention span.  Plaintiff's mood disturbance was noted to be mild, and her anxiety was moderate due to health problems.  Plaintiff was continued on her psychotropic medications.

During her telephone follow-up psychiatry appointment on May 4, 2021, plaintiff reported that her depression was controlled with medication.  (Tr. 943-53.) She denied having any recent panic attacks or thoughts of suicide.  Plaintiff reported that her home life was good but that her dad was dying.  Plaintiff reported using THC "now and then" and smoking a half pack of cigarettes daily.  She also reported a history of methamphetamine use but stated she stopped using the drug six years ago.   Plaintiff's mental status exam was within normal limits.  She was alert, cooperative, with coherent speech at normal rate and volume, fair insight and intact judgment.  She was fully oriented and her thought process was linear and goal-directed.  Plaintiff was attentive and had appropriate mood and thought content.  Her medications were continued.

In her follow-up psychiatry visit on August 31, 2021, plaintiff stated that she was agitated and irritable because she was tired of hearing that her physical symptoms were attributable to complications arising from Covid.  (Tr. 1179-87.) She reported increased anxiety due to family illness.  Plaintiff declined any

changes to her psychotropic medications.  Plaintiff's mental status examination

was unremarkable.  Plaintiff was advised to diet, exercise, and stop smoking.

During her next mental health visit by teleconference on January 26, 2022,

plaintiff reported feeling in a fog because her father died.  (Tr. 1214-22.)  Plaintiff

reported heightened anxiety from seeking disability benefits and trying to find an

apartment despite her status as a convicted felon.  Plaintiff rated her depression as

a 10 out of 10 and reported having trouble sleeping and eating due to problems

with her living situation.  Plaintiff also said she had been in a car accident and hurt

her shoulder and back.  Plaintiff believed her psychotropic medications were

working "fine" and that she would "breathe and work through" her issues.

Plaintiff's mental status examination was normal, and she was continued on

medications and counseled to diet, exercise, and quit smoking.

After thoroughly summarizing this evidence of plaintiff's conservative

mental health treatment and largely normal examinations, as well as the opinion

evidence from the record and plaintiff's daily activities and complaints of pain,[9]

the ALJ formulated a restricted light work RFC based on plaintiff's credible non-

exertional limitations of record with respect to her mental health impairments.

None of the evidence supported greater restrictions on plaintiff's ability to perform

---

[9] This evidence is discussed below and also supports the RFC determination, both with respect to the exertional and non-exertional limitations.

simple, unskilled tasks with only gradual changes in the job setting and duties.

Although plaintiff may believe that the ALJ should have assessed the medical

evidence differently to support greater limitations, it is not my role to reweigh the

medical evidence of plaintiff's limitations considered by the ALJ in her

determination of plaintiff's RFC. *Hensley*, 829 F.3d at 934. Under these

circumstances, the ALJ did not err in evaluating plaintiff's non-exertional

limitations when fashioning her RFC, and her decision is entitled to deference.

E.   <u>Opinion Evidence</u>

Plaintiff next argues that the ALJ erred in her evaluation of the medical

opinion evidence when fashioning her RFC. Plaintiff argues that the ALJ's

evaluation of state agency consultants Gretchen Brandhorst, Psy.D., and Barbara

Markway, Ph.D., did not comply with the new regulations by discussing the

supportability and consistency of the evidence, the two most important factors

required by the new regulations.  *See* 20 C.F.R. § 416.920c(a)-(c) (2017) (in

evaluating persuasiveness, ALJ should consider supportability, consistency,

relationship with the claimant -- which includes length of the treatment

relationship, frequency of examinations, examining relationship,  purpose of the

treatment relationship, and the extent of the treatment relationship, specialization,

and other factors); 20 C.F.R. § 416.920c(b)(2) (2017) (the ALJ was required to

explain how she considered the factors of supportability and consistency, which

are the two most important factors in determining the persuasiveness of a medical source's medical opinion).  Plaintiff contends that the ALJ erred by failing to adequately discuss the supportability factor and include all of the limitations found by the psychologists, whose findings the ALJ deemed persuasive.

After review of the medical evidence of record and plaintiff's function report, Dr. Brandhorst concluded that plaintiff retained the mental capacity to carry out two-step commands with adequate persistence and pace.  (Tr. 181-83, 186-88.)  Dr. Brandhorst found that plaintiff was not significantly limited in her ability to carry out short and simple instructions, perform activities within a schedule, maintain regular attendance, sustain an ordinary routine without special supervision, make simple work-related instructions, or complete a normal work schedule without an unreasonable number of rest periods.  (Tr. 187.)  Dr. Brandhorst believed that plaintiff would function best in a workplace without the need for direct supervision or frequent interactions with coworkers and members of the public.  (Tr. 187.)  She also concluded that plaintiff was capable of adapting to changes in the workplace, as long as they are predictable and introduced gradually.  (Tr. 188.)  At the reconsideration level, Dr. Markway reviewed plaintiff's medical evidence and activities of daily living and reached the same conclusions as Dr. Brandhorst regarding plaintiff's non-exertional limitations.  (Tr. 194-96, 199-201.)

In assessing the opinion evidence, the ALJ noted that both psychologists found that plaintiff had moderate limitations in all four areas of work-related mental functioning.  (Tr. 23, 181-84, 186-88, 194-97, 199-201.)  The ALJ found Dr. Brandhorst's opinion persuasive because it was consistent with plaintiff's typically normal mental-status examinations throughout the record.  The ALJ also found that Dr. Markway's was persuasive as it was consistent with Dr. Brandhorst's and the medical evidence of record which revealed plaintiff's consistently normal mental-status examinations.  (Tr. 23.)  After review of the opinion evidence, the ALJ concluded that the RFC's non-exertional limitations were "sufficient to account for any mental instability [plaintiff] may experience in the workplace."  (Tr. 23.)

Contrary to plaintiff's argument, the ALJ adequately considered the persuasiveness of the medical source evidence by discussing the supportability and consistency of the evidence.  The ALJ is not required to use the word "supportability" when considering persuasiveness.  *See, e.g.*, *Beyes v. Kijakazi*, Case No. 4:22CV614 SRW, 2023 WL 1765185, at *8 (E.D. Mo. Feb. 3, 2023); *Atwood v. Kijakazi*, Case No. 4:20CV1394 JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) ("use [of] the words 'supportability' and 'consistency' is not determinative; word choice alone does not warrant reversal").  Although she did not expressly use the word, the ALJ considered the "supportability" factor by

24

noting that both psychologists thoroughly evaluated plaintiff's medical history.
*See* 20 C.F.R. § 416.920c(c)(1) (the more relevant the objective medical evidence
and supporting explanations are to support the opinion evidence, the more
persuasive they will be).

Plaintiff complains that "the ALJ did not explain how normal mental status
exams were consistent with the state agency opinions nor how normal mental
status supported moderate limitations in the four areas of mental function."  ECF
14 at 7.  However, this argument ignores the previous six pages of the ALJ's
decision, which includes a detailed discussion of plaintiff's numerous normal
mental status examinations and routine treatment for her mental health
impairments, consisting of therapy and psychotropic medications which plaintiff
repeatedly described as effective.  (Tr. 16-23.)

Plaintiff argues that the ALJ erred because she did not adopt verbatim the
psychologists' opinions that changes in the workplace should be predictable, that
she was limited to two-step commands, and that she would function best with little
direct supervision or frequent interactions with coworkers or the public.  "The
regulation does not require an ALJ to address each and every part of a medical
opinion to show that the entire opinion was properly considered; nor does it require
the ALJ to entirely adopt each and every part of an opinion simply because she
finds it persuasive."  *McClure v. Saul*, Case No.1:20CV150 SNLJ, 2021 WL

3856577, at *7 (E.D. Mo. Aug. 30, 2021); *Koss v. Kijakazi*, Case No. 4:20CV996
RLW, 2022 WL 715009, at *10 (E.D. Mo. Mar. 10, 2022) (same).  Here, along
with many other restrictions, the ALJ adopted the limitations suggested by the
opinion evidence by limiting plaintiff to simple, routine tasks with only gradual
changes in the job setting and duties, and work providing ordinary routine.  She
was not required to adopt their conclusions verbatim, as "the ALJ is free to accept
some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th
Cir. 2022) (applying the revised medical-opinion regulations and holding that "the
ALJ is free to accept some, but not all, of a medical opinion").

Nor is the ALJ's decision "internally inconsistent" as argued by plaintiff
because she found that plaintiff had moderate limitations in social functioning but
did not include social limitations in the RFC.  The ALJ incorporates plaintiff's
credible social limitations by stating them in the affirmative, rather than the
negative, and a mere deficiency in opinion writing (if, indeed, such an approach is
even considered a deficiency) is not a sufficient reason to set aside an ALJ's
finding. *Grindley*, 9 F.4th at 629.  As correctly noted by the Commissioner,
whether stated in the affirmative or the negative, plaintiff's resulting RFC
adequately incorporated plaintiff's social limitations by restricting her to jobs
working with things, not people.  This is reflected in the vocational expert's
testimony that a claimant with plaintiff's RFC could perform work as a

housecleaner, bottle packer, or folder, jobs which do not require taking instructions or helping people to any significant degree. *See, e.g.*, DICOT 323.687- 018, Housecleaner, 1991 WL 672784, at *1 (Jan. 1, 2016) (providing that taking instructions from and helping people is not significant); DICOT 920.685-026, Bottle Packer, 1991 WL 687929, at *1 (Jan. 1, 2016) (same); DICOT 369.687-018, Folder, 1991 WL 673072, at *1 (Jan. 1, 2016) (same). The ALJ did not substantially err in her evaluation of the opinion evidence from Drs. Brandhorst and Markway, and her decision is entitled to deference.

Plaintiff makes similar, boilerplate objections to the ALJ's consideration of opinion evidence regarding her exertional limitations. State agency medical consultant Charlotte Endsley, M.D., reviewed plaintiff's medical records and her statement of daily activities in connection with plaintiff's application for benefits. (Tr. 183-86). She concluded that plaintiff could perform light work, with only occasionally climbing stairs, ladders, ropes, or scaffolds, and only occasional fine fingering and feeling due to her carpal tunnel syndrome. (Tr. 184-5.) Dr. Endsley believed that plaintiff should avoid exposure to vibration and hazards. (Tr. 185.) At the reconsideration level, Michael O'Day, D.O., reviewed plaintiff's medical records and reported activities and also concluded that plaintiff was capable of performing light work with the limitations previously stated by Dr. Endsley, except that he also limited plaintiff to occasional crouching and crawling. (Tr. 196-99.)

Upon review, the ALJ determined their opinions to be only partially persuasive because they failed to account for plaintiff's successful carpal tunnel release surgery which was completed after their opinions in this case.  (Tr. 23.) For that reason, the ALJ determined that their recommendation regarding fine fingering and feeling was overstated and that plaintiff's fine fingering and feeling was more appropriately limited to frequent, rather than occasional.  (Tr. 23.)  She also determined that plaintiff's RFC should account for plaintiff's shoulder problems by restricting her overhead reach on the right side.  (Tr. 23.)

Plaintiff again complains that the ALJ failed to evaluate the consistency and supportability of the opinion evidence.  Yet the ALJ provided a similar analysis as with the psychologists, noting whether or not the doctors' findings were consistent with the lengthy medical record previously summarized in her decision.   (Tr. 23.) She then incorporated those credible limitations which were consistent with the record evidence as a whole when fashioning plaintiff's RFC.  In so doing, she provided plaintiff a more restrictive RFC where the evidence as a whole supported it, and discounted those restrictions where inconsistent with the record evidence. That is precisely the role of the ALJ, and although plaintiff may believe that she should have assessed the opinion evidence differently to support greater limitations, it is not my role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in her determination of plaintiff's RFC.

*Hensley*, 829 F.3d at 934.  The ALJ did not err in evaluating plaintiff's non-exertional limitations when fashioning her RFC, and her decision is entitled to deference.

Finally, plaintiff argues that the ALJ should not have relied on any of the opinions given by non-examining consultants because they were given almost a year prior to the hearing.  This argument is not persuasive as the opinions were issued after plaintiff's alleged onset date and are therefore relevant evidence that the ALJ was required to consider.  *See* 20 C.F.R. §§ 404.1513a, 416.913a. Moreover, the ALJ did not rely solely on the opinion evidence when formulating plaintiff's RFC.  Instead she considered all relevant evidence of record, including the evidence which post-dated the opinions.   Plaintiff points to no doctor's opinion in the record which supports disabling limitations.  It remains her burden to prove her RFC.  *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021).

To the extent plaintiff attacks the opinion evidence because it was rendered by non-examining consultants, she relies on caselaw predating the new regulations, which now "require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified and experts in Social Security disability evaluation.  *See* 20 C.F.R. § 404.1513a.  The ALJ's reasonable reliance on an opinion from a highly qualified expert is within the zone of choice." *Morton v. Saul*, Case No. 2:19CV92 RLW, 2021 WL 307552, at *8 (E.D. Mo. Jan. 29,

29

2021).  The new regulations permit an ALJ to rely on opinion evidence from a non-examining consultant if it meets the consistency and supportability factors. *See* 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."). Such a determination does not constitute reversible error as the new regulations permit the ALJ to consider medical source evidence as appropriate. 20 C.F.R. § 416.920a(b)(1) (2017).  Ultimately, "the interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citing *Clay v. Barnhart*, 417 F.3d 922, 930 (8th Cir. 2005)).  Here, the ALJ did not substantially err in her assessment of the opinion evidence, and her decision is entitled to deference.

F.     Subjective Symptom Evaluation

Plaintiff also alleges that the ALJ improperly evaluated her credibility.  In addition to evaluating the medical evidence, the ALJ formulated plaintiff's RFC after consideration of the entire record, which included an evaluation of plaintiff's subjective symptoms, her testimony, and her daily activities as described by plaintiff and others.  When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are

consistent with and supported by the record as a whole.  20 C.F.R. § 404.1529(c);

SSR 16-3p.  "The credibility of a claimant's subjective testimony is primarily for

the ALJ to decide, not the courts."  *Pearsall v. Massanari,* 274 F.3d 1211, 1218

(8th Cir. 2001).  I must defer to the ALJ's credibility determinations "so long as

such determinations are supported by good reasons and substantial evidence."

*Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  When determining the

credibility of a claimant's subjective complaints, the ALJ must consider all

evidence relating to the complaints, including the claimant's daily activities; the

duration, frequency and intensity of the symptoms; any precipitating and

aggravating factors; the dosage, effectiveness and side effects of medication; and

any functional restrictions.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson v.*

*Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322.  "[T]he duty

of the court is to ascertain whether the ALJ considered all of the evidence relevant

to the plaintiff's complaints . . . and whether the evidence so contradicts the

plaintiff's subjective complaints that the ALJ could discount his or her testimony

as not credible."  *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).  It

is not enough that the record contains inconsistencies.  Instead, the ALJ must

specifically demonstrate in her decision that she considered all of the evidence.  *Id.*

at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  Where an

ALJ explicitly considers the relevant factors but then discredits a claimant's

complaints for good reason, the decision should be upheld.  *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ summarized plaintiff's testimony regarding her daily activities and subjective allegations of her limitations and found plaintiff's statements about the intensity, persistence, and limiting effects of her impairments not entirely consistent with the evidence of record.  The ALJ acknowledged plaintiff's reported symptoms and went on to weigh these allegations against the evidence of record as required by 20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ determined that plaintiff's subjective allegations with respect to her non-exertional limitations were not entirely consistent with her routine mental health treatment, consisting primarily of regular doctor's appointments, therapy, and medication.  (Tr. 17-22.)  *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (noting that in evaluating the claimant's subjective complaints, the ALJ properly considered the claimant's pattern of conservative treatment) (citing *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998)). The ALJ also properly considered plaintiff's treatment notes and objective findings, which as detailed above showed consistently normal mental status examinations.   Plaintiff repeatedly reported that her psychotropic medications were effective, and her mood disturbance was rated as mild, with only moderate levels of anxiety.  The medical records contain no evidence of hospitalizations for

mental impairments.  If a claimant's pain is controlled by treatment or medication, it is not considered disabling.  *See Cypress v. Colvin,* 807 F.3d 948, 951 (8th Cir. 2015).

The ALJ reached the same conclusion with respect to plaintiff's complaints of pain relative to her physical impairments.  As discussed above, the ALJ properly considered objective medical evidence, including imaging and physical examinations, which indicated largely normal results.  *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints).   The ALJ also noted that plaintiff told her physical therapists that she was independent in her daily activities (Tr. 22, 1237).  Plaintiff also reported her carpal tunnel symptoms were fully resolved except for some residual wrist pain while "using slot machines."  (Tr. 1382.)  Plaintiff's improvement with conservative treatment is inconsistent with disabling impairments.  *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (ALJ's conclusions as to the severity of pain and limitations consistent with fact that claimant was prescribed generally conservative treatment).

In assessing plaintiff's RFC, the ALJ appropriately considered her activities of daily living and her own reported abilities.  (Tr. 17-18.)  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).  With respect to her physical limitations, plaintiff testified that she was unable to work due to chronic pain in her neck,

lower back, right shoulder, hands and feet, diabetic peripheral neuropathy, and plantar fasciitis.  (Tr. 36-66.)  She claimed that her impairments affected her ability to stand more than fifteen minutes or reach overhead.  She stated that her hands swell up whenever she uses them and that she often drops things.  She claimed that she discontinued therapy due to a lack of health insurance.  Plaintiff also alleged exertional shortness of breath due to COPD, which worsened after she contracted Covid-19.  Plaintiff claimed that the muscle relaxers made her sleepy.  With respect to her mental impairments, plaintiff reported she had difficulty focusing, was easily distracted, had crying spells, social anxiety, thoughts of death, up to four panic attacks weekly, and was unable to get out of bed due to depression on some days.

In weighing plaintiff's credibility, the ALJ concluded that plaintiff's daily activities were not entirely consistent with her testimony and claimed limitations, given that she admitted in her function report that she lived with others and spent her days "hanging out' with her son, taking rides with her parents, watching television, and playing games on her phone.  (Tr. 315-25.)  Although she claimed that she needed to be reminded to change clothes, plaintiff reported no difficulty with personal grooming.  Plaintiff stated that she could drive or obtain rides when needed, although she did not often go out alone.  Plaintiff reported the ability to walk 100 feet before requiring a break.

Plaintiff complains that the ALJ did not properly consider her father's Function Report, which was completed one month after plaintiff completed her report and alleged significantly more limitations.  (Tr. 348-60.)  The ALJ expressly considered but discounted this evidence because the medical evidence of record did not support a significant worsening of plaintiff's conditions during the short time period, and she found plaintiff's report to be more persuasive in describing plaintiff's actual functional level.  (Tr. 18.)  "The inconsistency between [plaintiff's] subjective complaints and evidence regarding [her] activities of daily living also raised legitimate concerns about [her] credibility." *Vance v. Berryhill*, 860 F.3d 1114,1121 (8th Cir. 2017).

Even if the ALJ could have drawn a different conclusion about plaintiff's credibility after reviewing her daily activities, I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary determination.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  Here, the ALJ discounted plaintiff's subjective complaints only after evaluating the entirety of the record.  In so doing, she did not substantially err, as subjective complaints may be discounted if inconsistencies exist in the evidence as a whole. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994).

The ALJ expressly acknowledged that plaintiff was experiencing pain, but concluded, after evaluating the entirety of the record, that plaintiff's pain was not

so severe as to be disabling.  Where, as here, an ALJ seriously considers but for good reasons explicitly discounts a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination.  *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).  The ALJ evaluated all of the evidence of record and adequately explained her reasons for the weight given this evidence.  Because the ALJ's reasons for not fully crediting plaintiff's subjective complaints are supported by the record, I will defer to her judgment.  *See Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).  Credibility determinations, when adequately explained and supported, are for the ALJ to make.  *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

In this case, the ALJ evaluated all of the evidence of record and adequately explained her reasons for the weight given this evidence in a manner consistent with the new regulations.  Good reasons and substantial evidence in the record as a whole support the ALJ's RFC determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice."  *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the

record as a whole.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).  "Substantial

evidence is defined to include such relevant evidence as a reasonable mind would

find adequate to support the Commissioner's conclusion."  *Id.*  Where substantial

evidence supports the Commissioner's decision, this Court may not reverse the

decision merely because substantial evidence exists in the record that would have

supported a contrary outcome or because another court could have decided the case

differently.  *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner

v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of

record sufficient to support the ALJ's determination that plaintiff was not disabled.

Because substantial evidence on the record as a whole supports the ALJ's decision,

it must be affirmed.  *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is

affirmed, and Stephanie Rudloff's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of March, 2024.